The first case on this afternoon's docket is people of the state of Illinois versus Mikkel Gibson. And we have Mr. Wells again and Mr. Daly again. Hope you at least got a good lunch. Did you shake your head no? Sorry. Sorry. Mr. Wells. May peace of court, counsel. My name is Larry Wells and I represent defendant Michael Gibson in this cause. Mr. Gibson was convicted of three burglaries and he raises several issues before this court. But unless there are questions, I'm going to confine my presentation today to the failure of trial counsel to present the alibi. Now, in his first appearance in court, when he first brought before a judge, Mr. Gibson states more than once that he's really surprised that he's been taken up for this charge because he was out of state at the time the offense occurred. He was in Kentucky. And sure enough, shortly after this, when the public defender takes up the case, there's notice of an alibi defense presented in the record supported by the statements of three witnesses. Unfortunately for Mr. Gibson, he doesn't stay with the public defender. He gets private counsel and private counsel doesn't know his job. The case goes to trial and the attorneys tell the jury that the evidence is going to show that Mr. Gibson wasn't there. In other words, there's an alibi. But none of the alibi witnesses are presented. Mr. Gibson registers surprise about this on several occasions, raises ineffective assistance of counsel, and this court grants summary relief on that basis. The case is sent back for a new post-trial motion hearing on the question of whether he was denied a fair trial because the alibi wasn't presented. And at that time, the witnesses come forward and they testify to the alibi that on the 24th and 25th, he was in Kentucky. The attorney who represented Mr. Gibson at trial testified and really locks up the case for him. He admits he didn't contact the alibi witnesses. He admits he didn't know there was an outstatement of alibi. He didn't read the record. We know that because he was unaware of the motions to suppress. He states that he believes that it's Mr. Gibson's duty, the person in jail, the client, to contact the witnesses and do the investigation. And, of course, the cases all say exactly the opposite. It's the lawyer's duty to contact these witnesses. He has to be familiar with the pleadings, and he wasn't. So it's very, very easy to establish the first prong of strictness because it's unreasonably poor performance for a lawyer not to know what's in the common law record, to know that there's statements of alibi witnesses, and not to do the investigation. Do you agree with the State's contention that the defendant himself told Mr. Stegmaier that two of the witnesses, the sister and mother, wouldn't be able to testify because one would lose their job and one was having heart problems? Is that irrelevant? I don't remember anything about that. But, I mean, of course, the case could be rescheduled if they needed to do that. And the witnesses testified they were ready, willing, and able to testify, and he admits he never contacted them. So this lawyer also stated that he was under the belief, mistakenly, that the place of the alibi and the place of the crime were only an hour or an hour and a half apart. When, actually, as the record shows, it's much closer to a six or eight hour round trip. And this was three burglaries in one night. So you've got to wonder, well, how in the world did this thing not get reversed? And it's easy. The judge reversed the burden. He said that since Mr. Gibson didn't establish that it was impossible for him to have committed the crime, he couldn't get released. But this is the Strickland standard. All he has to establish is a reasonable probability of a different outcome. The first problem's not a problem at all. We already know that the lawyer didn't do reasonably well on this because he didn't contact the alibi witnesses and held Mr. Gibson to that. And the second problem's not any problem either because, of course, there's a reasonable probability of a different outcome. You have people testifying against someone else on the 24th and the 25th. Isn't the standard that it has to be at least a fair jury question? Yeah, there has to be a question as to the reliability of the burden as a result. And that's not a problem here because another reason it's not a problem, besides the strength of the alibi, is the weakness of the state's case. No witness testified that Mr. Gibson committed this crime. There were statements attributed to eyewitnesses, and those eyewitnesses repudiated his statements. So, the state has a very good case. There's a great alibi. And the defense attorney held it, you know, before he stated it was his client, he believed it was his client's duty to contact the witness's clients in jail. So, we'd ask the court to reverse this case and send it back for a new trial due to ineffective assistance of counsel. Mr. Westman. Thank you, Mr. Wells. Mr. Daly. Thank you. Your Honor, may I please report the case? It's interesting. Yes, it is. I agree. Now, there's really kind of two sets of facts here. Now, the witnesses provided affidavits and testified at the post-trial slash post-conviction hearing. They testified in accordance with their affidavits that basically, yes, the defendant was there, another individual by the name of Clinton. Forgive me for a second. Another person who was… I'm sorry about that. That Mr. Lopson, the defendant, were in Kentucky on the dates of questioning, April 24th and 25th of that year, which was that night of those two days when these burglaries occurred in Randolph County. They were down there and they testified that they were helping to disassemble a garage. There was actually three affidavits and only two people testified, the grandmother, the sisters. Mr. Stechmeyer testified, and I'll be perfectly frank about his testimony. It's obviously inconsistent with perhaps the defendant's characterization of the hearing in the sense that he recalls that these witnesses that were mentioned to him as perhaps being important to the case, regarding something about cutting logs or something like that, I think was his testimony. He refused to or wouldn't characterize it as being presented to him as an alibi by the defendants. He did, I believe his testimony was that he had asked the defendant to basically have them contact him. They didn't contact him, and when he asked the defendant about that, he said, well, one of them would lose her job if she didn't testify, and the other would have some health issues that would keep her from going to court. So I think that you're going to see that sort of, you know, distinction in the testimony, but I do want to say this as well, and it kind of made me scratch my head a little bit, is Mr. Stechmeyer then did proceed to testify sort of in lines of, well, it's an alibi in defense, when it wasn't really something to pursue because his knowledge of the case is that these witnesses who supposedly were half-operating accounts of the defendant were actually going to testify, but they didn't, that he had nothing to do with it, and that he thought that his case was strong on that regard, and that by presenting what he thought would be an impeachable alibi in defense would weaken rather than strengthen the defense. It's a head scratch, I suppose, because it's not clear to me whether or not he's being inconsistent or whether he's just sort of kind of post-facto looking at what's going on in this hearing and offering his own opinion about why he wouldn't have pursued the alibi defense in any way. So I offer no opinion in any regard one way or the other, but of course I just want this Court to be aware of it so when it reviews the record, it can make that assessment. It's not really the central premise of my position in any way, the central position of the premise, except for not, is that the alibi defense was very impeachable, in fact, it was essentially impeached, because this Timothy Ladoffs testified at trial, and he testified implicating not only himself but the defendant as well. That testimony, which seemed to be accepted by the trial fact, I would submit really drove a pretty significant stake through the heart of the alibi defense. Can't that be reversed, though? Because there was some indication that it wasn't there, that Timothy Ladoffs received something in return for this testimony? I mean, these alibi witnesses could say, okay, he said he was there and he did it, but he couldn't have been because he was in Kentucky. I think that that's a very valid point. And I also think that if you look at the record, you'll see that Mr. Ladoffs, like all the other witnesses who were presented as being basically working with the defendant or cooperative at all, in fact, one of their testimony was presented only by virtue of the prior inconsistent statement statute. That said, I think that in my position, if you read his testimony, notwithstanding his reluctance, notwithstanding the fact that he was clearly being drugged, kicking and screaming, okay, he didn't disavow his participation, he didn't attempt to disavow the defendant's participation, which, when everyone else did, okay. The fact that he may have been, you know, worked in a position where he's being placed to testify because that's what they wanted him to do is not an unusual circumstance. And, of course, this all came out during the trial. But the fact of the matter is when you look at his testimony, he says what he says, but he doesn't repudiate that in any way. And all that's well and good, okay, and we can look back on it and say all that, but the problem is did the defendant get a fair chance to present his alibi defense and the jury an opportunity to reject Laup's testimony? And that's obviously the ultimate question. Obviously my position is that had he presented the alibi defense, my position has to be that he presented the alibi defense. If he had been able to present what is the defendant's argument that he wanted to present, it wouldn't have mattered because it would not have been an availing alibi defense. Given Laup's testimony, given the fact that, as the circuit court pointed out, this could have been, this crime could have been perpetrated at a time period that these witnesses weren't aware that they were there. In fact, with Laup submitting his participation, it certainly bolsters that particular argument. And I think you have to kind of look at what Mr. Stegmaier says as well. Now, the defendant argues that essentially the circuit court reversed the burden. I don't know. My argument is not so much that I want to hear what the circuit court is telling the record of what should be the result. What I'm saying is what does the record itself say? And if you look at the combination of these factors, I think the circuit court's decision is supportive. Can we talk about the other crimes evidence? Yes. There were two instances, I think, where that came to trial. The first was the testimony of one of the witnesses who was the, I guess, a participant in an overhear. And when he was being questioned by the prosecutor, he sort of spontaneously, you know, offered up the defendant's participation, I guess, in an establishment that wasn't one of the charged offenses. Was there a jury instruction? There was not a jury instruction, no. There was an instruction from the bench at the time to disregard any evidence that wasn't related to the charges that were before the court. The defendant does argue in his brief that it might have been beneficial to offer a jury instruction. But the jury instruction the defendant has offered, I think, would have been probably counterproductive. That instruction deals with, essentially, the use of prior crime evidence for bias, modus operandi, things that are not. I think that these type, that obviously these offenses are not probably permissible under any of these theories. I think offering that kind of instruction would just draw the jury's attention to something that you're probably, at this point, hoping they've already forgotten or at least heeded the judge's admonition to disregard. In fact, I think such an instruction would probably be counter to the court's instruction from the bench. So I do think that an instruction from the bench probably carries maybe even more impact than the jury instruction at the end of the trial and that's because of the closeness in time to when it's being done. I think the prosecutor probably could have corralled his witness a little bit more closely in the sense of what he was saying. But it's our position that this particular mention of the other crimes offense, it was objected to, the court ruled from the bench, it admonished the jury, the references were brief, they warmly elaborated upon. I don't believe that it was such that it was a sufficient gravity that it would have swayed the jury to convictment, otherwise it would have considered acquittal. The other instance where it came about was during the testimony of the Perry County investigator, I guess it did record it, who was involved in the verdict. He testified, I think, in passing with regards to his involvement, that he was involved in the investigation of the defendant and others in Perry and Randolph County burglaries. And I think that that was not objected to and of course that was probably an improper reference as well. Perry County is not obviously being charged here. But again, I would just state that it was a brief comment, it was presented sort of in the context of why this Perry County officer, or rather the Randolph County officer, was being put on the witness stand to discuss his involvement in the case. I don't think that it was intended or brought out by the prosecutor in any way to try to deny the defendant a fair trial, it should have been avoided. But again, I don't think that either these things, in combination or in isolation, were sufficient to deny the defendant a fair trial. Are there any other issues that the court wishes to address? I have them all. There's six of them, we've got them. There's seven, you conceded the seventh. Yes, that's correct. Except for being weak from lack of food. I'll stay for that. Thank you, Mr. Daly. Mr. Wells, rebuttal. Mr. Wells, I have a quick question about another issue. And it's the premise of your argument against the constitutionality of 115-10.1 is that that statute would allow the defendant the introduction of this prior statement, whereas in civil court it would not. Correct. I'm just going to throw something out at you here. As I understood the facts, the witness was asked about it, he said, I don't remember. Then the witness was shown the statement and was asked, does this refresh your recollection? He said, no. Okay. In a civil case, under those circumstances, couldn't that statement have then been admitted as past recollection recorded? Oh, I don't think it could be admitted as past recollection recorded. I don't believe that he... Because they could have presented evidence that it was done contemporaneous with the event, it was accurate at the time, you know, all the prerequisites of that. I didn't... I'm throwing you a zinger, I know. Just asking. Yeah, I didn't think about that. I don't think that in any event... If it could, that destroys your argument, doesn't it? Because your whole argument is that if this is something that could be admitted in criminal court but not civil. No, I think my argument is that it was brought in under the operation of this statute and there's no similar statute in the civil law. So under this statute, this evidence comes in substantively in situations where there's no similar statute in civil cases. Now, the evidence could come in for limited purposes in lots of different situations, even in criminal cases to show no sovereignty or all kinds of things that other states could come in. But coming in for the substantive evidence to prove the truth of the matter asserted, that's another matter. And there's no similar statute under the civil law. No similar statute, but when the evidence comes in as past recollection recorded, it's substantive. There might be other common law exceptions that would allow it in. But of course, none of those were offered here. They came in under that statute. And so I don't know that any one of those other ones have been litigated or what the outcome might have been. But they certainly wouldn't have come in under the civil code under this statute if it's not clear. You want to strike down that statute? Actually, no. No? No, no, because it's fine as it is. It's absolutely fine. We only are against it if it's used against a defendant. It's not unconstitutional on the space that if they want to say the statute's okay so the defendant can put this kind of evidence on to protect him, that's fine. That is not a problem. It's only unconstitutional as applied because if the state gains a benefit from this and a defendant is harmed by it when he would not be harmed if he was a defendant in a civil case because the statute doesn't apply, then it's unconstitutional as applied. If the defendant goes forward and uses this to his benefit, there's nothing unconstitutional about that. So we don't want to come forward with the idea that somehow this is per se unconstitutional. We're not saying that. We're only saying that because two people, and the example that we give is a very concrete one. The store owners come in and say, hey, we want compensation for our busted door. And the evidence comes in just like this. They couldn't do it because there's no statute and there would be no evidence from these witnesses that would be admitted if there were inconsistent statements as substantive evidence. They're two different, it's considered to be unremarkable evidence. Not good enough in a civil case, but plenty good enough to send a guy to prison. That's the 115-10.1 effect. As far as the attorney saying that the alibi wasn't presented to him, it didn't have to be presented to him. It's in the record. It's a statement of alibi by the prior defense attorney with the statements. It didn't have to be presented to him by anyone. There's a formal statement of it. And he admits on page, this is 113, he admits he had no contact with these witnesses and didn't try to. On that same page, he says he believes that these people were coming from Paducah or right by Paducah. And actually, it's Newmanburg County, miles and miles, hours past. So he didn't even look to see where these people were. Is Paducah only an hour and a half from Perry County? I don't know. He said it's only an hour. An hour? Well, it can't be an hour. He says hour, hour and a half. He said that's how he based his so-called strategic decision not to present was based on his subjective belief without checking that they were only about an hour away or an hour and a half at the most. Paducah's not Newmanburg County. No, I know that. I just didn't think you could get to Paducah in an hour. He didn't look. He didn't look. He gave them a record as to what it was, but he didn't look. And he held that it was his defense for him to go get these people. So I think the record's really clear that Mr. Gibbons didn't get a fair chance to present his facts based on my defense, that counsel was in effect. We ask for your support to reverse this case and remand it for a new trial. Thank you, Mr. Wells. Thank you, Mr. Daly. I take this matter under advisement and I move the rule. Thank you.